United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 19, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-41333
_____


IN THE MATTER OF:   KAREN JUNE SCRUGGS;
THOMAS HERBERT SCRUGGS,

                                                    Debtors

_____

KAREN JUNE SCRUGGS; THOMAS HERBERT SCRUGGS,

                                                    Appellees,

versus


DONNA LOWMAN, as Personal Representative
of the Estate of the late JOHN F. LOWMAN,

                                                    Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before SMITH, WIENER, and PICKERING, Circuit Judges.

PER CURIAM:[*]

Appellant Donna Lowman ("Lowman"), on behalf of the Estate of
her late father, John F. Lowman ("Decedent"), filed this appeal
from an August, 2003 order of the district court that reversed an
October, 2002 order of the Bankruptcy Court.  The Bankruptcy Court
had granted its order in response to Lowman's motion for relief

_____

[*] Judge Wiener specially concurs and reserves his right to
file a Special Concurrence at a later time.

from the automatic stay that was then in place in the Chapter 13 bankruptcy of both Appellees, namely, (1) Karen June Scruggs ("Karen") who had been divorced from Decedent in Florida on March 25, 1994; and (2) Thomas Herbert Scruggs, Karen's husband before and after the time in June, 2002 when they filed for Chapter 13 bankruptcy protection (collectively the "Debtors"). We conclude that the instant appeal of the district court's order is moot as a result of events that occurred after October 2, 2002 (the date of the Bankruptcy Court's order that lifted the automatic stay for the limited purpose of allowing "the Florida State Court [property settlement] enforcement action to proceed to final judgment"), but before August 7, 2003 (the date of the district court's order that reversed the Bankruptcy Court). Furthermore, as we conclude that this matter became moot before the district court granted the order appealed to us, mootness vitiates both our appellate jurisdiction and the district court's order as well. Thus we not only must dismiss this appeal but also must vacate the district court's order: The Bankruptcy Court's order lifting the automatic stay was in full force and effect at all times pertinent to the state court action in Florida because the judgment in that action was rendered and became final and no longer appealable after the Bankruptcy Court lifted the automatic stay and before the district court purported to reverse the Bankruptcy Court.[1]

---

[1] As Appellees in Lowman's appeal to us, the Debtors filed a motion to dismiss Lowman's appeal as moot. A different panel of

## I. FACTS & PROCEEDINGS

The lengthy and contentious litigation between, on the one hand, Decedent (and now his estate, represented since his death in 1999 by Lowman, his daughter and legal representative), and, on the other hand, Decedent's former wife Karen (with her current husband, one of the Debtors) continues to be fought out in the state courts of Florida and the Bankruptcy and district courts of the Southern District of Texas as it has been for more than 10 years. The only aspects of this litigation before us today, however, are those affected by (1) the Bankruptcy Court's October 2002 order in the Debtors' Chapter 13 proceedings, lifting the automatic stay at the behest of Lowman, (2) the Debtors' October 11, 2002 appeal of that ruling to the district court, (3) the district court's August 7, 2003 order reversing the Bankruptcy Court's order and re-imposing the automatic stay, (4) Lowman's September 4, 2003 appeal to us from that ruling of the district court; and (5) the subsequent urgings of both Lowman as appellant and the Debtors as appellees that we dismiss the instant appeal as moot. We therefore recount briefly only the background chronology of this case needed to put our disposition of the instant appeal in perspective:

- September, 1993:   Decedent and Karen marry

- October, 1993:   Decedent retires from 20-year career with YMCA and elects 100% Joint and Survivor

---

this court ordered the Debtors' motion carried with the case. Our ruling today of necessity disposes of the Debtors' dismissal motion.

|   |   |   |
|---|---|---|
| | | Annuity under the YMCA's ERISA pension plan |
| • | November, 1993: | Decedent receives first monthly payment of his <u>participant</u>'s annuity under YMCA pension plan |
| • | March, 1994: | Decedent and Karen separate |
| • | March 25, 1994: | Final Florida divorce decree filed, incorporating property settlement |
| • | October 25, 1999 (the day before Decedent's death): | Motion filed in Decedent's name in circuit court for Monroe County, Florida seeking enforcement of Karen's divorce settlement agreement waiving any interest in Decedent's pension |
| • | October 26, 1999: | Decedent dies in Michigan from "head and throat cancer" "months" after onset (per his Certificate of Death); his lifetime "joint" annuity ceases automatically |
| • | November 1, 1999: | Pursuant to Decedent's 1993 election of "Joint and Survivor" annuity, Karen's <u>survivor</u> annuity commences and she receives her <u>first</u> monthly payment from that feature of the pension elected by Decedent under the YMCA retirement plan |
| • | October 13, 2000: | Lowman, as Decedent's estate representative, substituted as plaintiff in Florida property settlement enforcement action |
| • | March 5, 2002: | Florida circuit court enters "**Order On Federal ERISA Issue**" |
| • | April 24, 2002 | Debtors file for bankruptcy protection under Chapter 13 in Southern District of Texas, activating automatic stay against, <u>inter</u> <u>alia</u>, Lowman's prosecution of the Florida enforcement action |
| • | June 19, 2002: | Lowman seeks relief from automatic stay in Bankruptcy Court |

- October 2, 2002: Bankruptcy Court grants relief from stay "to allow the Florida state court enforcement action to proceed to final judgment"

- October 11, 2002: Debtors appeal bankruptcy order to district court (S.D.Tex.)

- October 16, 2002: Lowman files motion for final judgment in Florida proceeding

- October 21, 2002: Debtors file motion in Bankruptcy Court to stay its decision and order granting Lowman relief from automatic stay

- November 2, 2002: Florida court issues Final Judgment

- November 8, 2002: Bankruptcy Court denies Debtors' motion to stay its decision and its order lifting automatic stay

- December 2, 2002: In absence of an appeal by Karen, Florida judgment becomes final and no longer appealable

- August 7, 2003: District court for Southern District of Texas reverses Bankruptcy Court, orders stay reinstated

- September 4, 2003: Lowman appeals district court order to this court

- April 25, 2003: Bankruptcy Court orders Debtors' case converted from Chapter 13 to Chapter 7

- December 30, 2003: Debtors discharged in bankruptcy under Chapter 7; automatic stay expires automatically pursuant to 11 U.S.C. § 362(c)(2)(C)

- March 9, 2004: Debtors file motion to dismiss this appeal as moot

- April 30, 2004: Panel of this court orders dismissal motion carried with this appeal

## II. ANALYSIS

5

Both protagonists in this procedural chess match now insist that the instant appeal is moot, albeit they differ significantly as to when and why it became moot.  As mootness is jurisdictional and we must examine our appellate jurisdiction, on our own motion if need be, we are obligated to determine de novo whether the instant appeal is moot.[2]

"A controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interest to maintain the litigation....A controversy can also become moot when the parties lack a legally cognizable interest in the outcome."[3]  "A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents."[4]

The Debtors insist that mootness occurred on — but not before — December 30, 2003, the date on which they received their Chapter 7 bankruptcy discharge which ipso facto dissolved the automatic stay.  They argue that, because the instant appeal is from an order that the district court granted before the automatic stay evaporated on discharge, the appeal of that order to us became moot when the automatic stay itself became moot on discharge.  This,

_____

[2] See Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998).

[3] Chevron, U.S.A., Inc. v. Trailour Oil Co., 987 F.2d 1138, 1153 (5th Cir. 1993)(internal citations omitted).

[4] Goldin v. Barthalow (In re Goldin), 166 F.3d 710, 717 (5th Cir. 1999).

they contend, eliminated any possibility of our issuing a ruling that could affect the rights of the parties. As such, reason the Debtors, the district court's reversal of the Bankruptcy Court's order is final and no longer appealable. They thus assert that the Florida judgment is a nullity because it was rendered (and became final) at a time when the automatic stay was in full force and effect. Stated differently, the mootness of the appeal of the district court's reversal of the Bankruptcy Court means that the automatic stay was in effect —— not lifted —— when the Florida judgment was rendered, making it void ab initio.

Despite being the appellant, Lowman too insists that this appeal is moot. She urges that, in addition to our obligation to satisfy ourselves that we have appellate jurisdiction, we must also ensure that the court who's ruling is under review had jurisdiction to issue such ruling.[5] Lowman adds that "[i]f the district court lacked jurisdiction '[this court's] jurisdiction extends not to the merits but merely for the purpose of correcting the error of the lower court.'"[6] Thus, urges Lowman, even in a moot appeal such as this one, we "retain authority to order vacatur of a moot case....If mootness occurred prior to the rendering of a final judgment by the district court, vacatur and dismissal is

---

[5] See Bauhaus USA, Inc. v. Copeland, 292 F.3d 439, 442 (5th Cir. 2002).

[6] United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000) citing New York Life Ins. Co. v. Deshotel, 142 F.3d 873 882 (5th Cir. 1998).

7

automatic."[7] Lowman thus argues that, in addition to dismissing this appeal for mootness, we are obligated to determine whether the case appealed from was already moot when the district court entered the appealed order, and if it was, to vacate the district court's order when we dismiss this appeal.

According to Lowman, the question of the automatic stay in bankruptcy had become moot <u>before</u> the district court ruled. Thus, even though the parties agree that the controversy before the Bankruptcy Court became moot <u>no later than</u> the time of Debtors' discharge under Chapter 7 on December 30, 2003, Lowman differs from the Debtors as to the date when mootness occurred, viz., almost a year earlier, on December 2, 2002, when the Florida court's judgment became final and unappealable. By ending the "case or controversy" between the parties, that finality produced mootness. As that date <u>followed</u> the Bankruptcy Court's order lifting the stay but <u>preceded</u> the district court's order reversing that Bankruptcy Court order, argues Lowman, the district court's order being appealed to us is itself moot, leaving the Bankruptcy Court's pre-mootness, stay-lifting order in place and not appealable to either the district court or us. As such, the final and unappealable Florida judgment remains valid because the automatic stay had been validly lifted and thus was not in place (1) when the state court's judgment was rendered or (2) when that judgment became final and no

---

[7] <u>Goldin</u>, 166 F.3d at 718 (emphasis in original).

8

longer appealable. That, in turn, ended the case or controversy between Lowman and Karen, leaving no live case for the district court to decide by reversing (or, for that matter, affirming) the Bankruptcy Court.

We agree with Lowman. Regardless whether, sometime in the future, the judgment of the Florida circuit court should be the declared null ab initio for violating ERISA's preemptive ban on both voluntary and involuntary alienation, that judgment is the matter lying at the heart of this federal litigation. When that state court judgment became final and no longer appealable on December 2, 2002, at a time when the automatic stay remained lifted for the limited purpose of letting that happen, the Article III case or controversy in the federal courts ceased to exist. Consequently, anything that the Bankruptcy Court or the district court purported to do with regard to that judgment after December 2, 2002 was moot for lack of a live controversy.

It is axiomatic that the controversy between these parties could not have become "more moot" as a result of the subsequent evaporation of the automatic stay when, more than a year after the Florida judgment became final and no longer appealable, the Debtors were discharged under Chapter 7: There is no such thing as being a little bit moot. Under the doctrine of mootness, the district court no longer had jurisdiction to entertain Debtors' appeal from the Bankruptcy Court's order of October 2, 2002 once the Florida judgment became final two months later. Stated differently, the

9

matter became moot on December 2, 2002, <u>before</u> the district court's 2003 order purporting to reverse the Bankruptcy Court, and <u>before</u> the Debtors' 2003 discharge under Chapter 7.  As we recognized in <u>Goldin</u>,[8] when a matter on appeal is determined to have become moot, not merely prior to or during the appeal but prior to the date of the order being appealed from, we must dismiss as moot the appeal before us <u>and</u> vacate as moot the ruling from which the appeal was sought.  That is the course we are compelled to take today.

### III. CONCLUSION

To recap, the district court's order that was appealed to us is moot because the Florida state court judgment had become final and no longer appealable long before the district court purported to reverse the Bankruptcy Court (and even longer before the Debtors' Chapter 7 discharge).  Consequently, by the time the district court acted in August of 2003, the sole case or controversy between the parties had ceased to exist as a matter of law.  Under the doctrine of mootness, this deprived the district court of jurisdiction, making its order reversing the Bankruptcy Court void <u>ab</u> <u>initio</u> and the appeal of that order moot, thereby depriving us of appellate jurisdiction.  Thus, the only federal court ruling left uninfected by mootness was the Bankruptcy Court's October 2, 2002 order lifting the automatic stay and keeping it lifted until after the Florida judgment had become final, non-

---

[8] <u>In re Goldin</u>, 166 F.3d 710 (5th Cir. 1999).

10

appealable, and executory.  We therefore dismissal this appeal and vacate the order of the district court, both under the doctrine of mootness, for lack of jurisdiction.

APPEAL DISMISSED; DISTRICT COURT ORDER VACATED.